FILED
 2012 Jan-12 PM 12:10
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LINDA GIBBS AUSTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 11-G-1263-S ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

The plaintiff, Linda Gibbs Austin, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

> (3) whether her impairment meets or equals one listed by the Secretary;
>
> (4) whether the claimant can perform her past work; and
>
> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons

4

are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to

pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff, who was 57 years old at the time of ALJ Jerome L. Munford's decision, has a 30-year uninterrupted work history as a telecommunications specialist and teleconfernce coordinator. [R. 118-119, 132].  She claims disability as of March 26, 2004.

[R. 13]. The ALJ found that the plaintiff has the following severe impairments: hypertension, rheumatoid arthritis, history of carpal tunnel syndrome, degenerative joint disease of the knees, and history of obstructive sleep apnea. [R. 31].

The record reflects that the plaintiff has carried a diagnosis of rheumatoid arthritis since October 24, 1996. [R. 214-215]. Treatment notes from C. Douglas Bell, M.D., of Montclair Rheumatology, detail rheumatoid arthritis and musculoskeletal complaints generally treated with medications and injection therapy from October 1996 to July 2007. [R. 214-244]. As noted by the ALJ, Dr. Bell's notes indicate that despite flares, her arthritis was fairly well-controlled. However, on May 10, 2007, Dr. Bell noted possible increase disease activity with her arthritis, pain in her feet caused by pes planus[1] and pronation deformity, and degenerative joint disease of the knees. [R. 217].

In April 2008, the plaintiff started treatment with W. Alan Paul, M.D., of Rheumatology Associates. On April 8, 2008, Dr. Paul took x-rays of her left knee, which showed "complete obliteration of the medial tibiofemoral joint space, basically bone on bone." [R. 272]. His assessment was rheumatoid arthritis and end-stage left knee, and because of active synovitis she was again given Prednisone. Id. An antinuclear antibodies screen[2] (ANA) resulted in a level of 211 units per milliliter.

---

[1] "[F]latfoot, a deformed foot in which the position of the bones relative to each other has been altered, with lowering of the longitudinal arch." Dorland's Illustrated Medical Dictionary 1268 (28th Ed. 1994).

[2] The ANA screen is used to test for autoimmune diseases, including rheumatoid
(continued...)

On May 7, 2009, the plaintiff underwent a consultative physical examination at the behest of her attorney by G. Bryan Dewees, III, M.D.[3]  She told Dr. Dewees that it is difficult for her to sit in any one position for a long period of time:

> She is not able to stand and walk about any distance.  She is not able to stand in one position for a long period of time.  She is not able to use her legs, left more than right, in repetitive motions because this makes her knees flare.  She has trouble grasping objects because of the arthritis in her hands.  She has continued low back pain.

[R. 312].  The plaintiff stated that it is hard for her to sleep at night because of pain.  Id. Dr. Dewees took her history, reviewed her systems, and performed a physical examination.  His impression was rheumatoid arthritis, left knee pain due to rheumatoid arthritis and osteoarthritis changes, obstructive sleep apnea, hypertension, osteoporosis, restless leg syndrome and a history of carpal tunnel syndrome. [R. 314].  Dr. Dewees concluded:

> Ms. Austin is not able to sit in one position for a long period of time.  She is not able to stand in one position for any length of time.  She is not able to walk about for any distance because to do so would cause her arthritis in her peripheral joints and also in her left knee to flare.  She also has a considerable degree of low back pain and limited mobility.
>
> Her rheumatoid arthritis is documented by her medical records that have been sent with her.  She has a definite diagnosis of rheumatoid arthritis by a rheumatologist, Dr. Alan Paul, and she has a positive serology which is documented by his notes.

---

[2] (...continued)
arthritis.  A negative screen result is less than 100 U/ml.

[3] Dr. Dewees is a Fellow of the American College of Rheumatology. [R. 314].

> Ms. Austin is not able to use her upper or lower extremities for pushing and pulling movements in a repetitive manner. She is not able to bend, stoop, crawl, or climb because such activity would cause her arthritis to flare.
>
> I do not feel that she could work at any job 8 hours a day, 40 hours a week, 50 weeks a year, even if such job required a lighter, sedentary nature.
>
> In other words, I believe that she is totally and permanently disabled by her rheumatoid arthritis and other medical problems.

Id. Dr. Dewees completed a Clinical Assessment of Pain form, in which he opined that the plaintiff has pain to such an extent to be distracting to adequate performance of daily activities or work. [R. 308]. In his clinical judgment, he stated that physical activity would result in greatly increased pain to such a degree as to cause distraction from tasks or total abandonment of tasks. Id. Dr. Dewees also completed a Physical Capacities Evaluation in which he estimated that the plaintiff could lift and carry 10 pounds occasionally or less frequently, sit for one hour, and stand and walk for one hour in an eight-hour workday. [R. 307].

> The ALJ discounted Dr. Dewees's opinion:

> The undersigned affords Dr. Dewees' PCE limiting the claimant to less than sedentary work as well as his clinical assessment of pain form little to no weight because his conclusions are not supported by his findings as reflected in his report of examination. Although he provided no explanation, Dr. Dewees appears to be using the Ritchie Articulation Index (i.e. 0 is none, 1 is mild, 2 is moderate, and 3 is severe) as a rating scale. As such, although he concludes that the claimant is unable to sit for a total of more than one hour in an eight-hour period, his examination found only mild lumbar tenderness, mild to moderate paravertebral muscle spasm, and some limitation in forward flexion–insufficient to justify the level of limitation reflected on the PCE. Additionally, as discussed above, there is no evidence that the claimant has any significant back impairment that

would be expected to limit her ability to sit.  Dr. Dewees also opines that
the claimant is unable to use her hands for fine and/or gross manipulation
on more than an occasional basis.  Although his report cites mild to
moderate synovitis in the claimant's wrists and MCP joints, he fails to
identify the specific MCP joints and cites no limitation in the claimant's
grip strength.  Since her diagnosis with RA in late 1996, the claimant's
hand synovitis, when present, has generally been limited to one or two MCP
joints, and her wrists have demonstrated almost no sign of RA.  The
episodes of active synovitis identified have also been characterized as mild
and have consistently short-lived.  Dr. Dewees limits the claimant to
occasional reaching based, presumably, on his finding of decreased
abduction in both shoulders but fails to quantify the degree of reduction.
AS discussed above, the claimant has been treated for recurrent shoulder
tendonitis and has responded to treatment with no findings of any
significant permanent impairment.

Finally, Dr. Dewees limits the claimant to standing and walking, combined,
for a total of only one hour out of eight based on his finding of marked
synovitis in her left knee with moderate crepitus, tenderness, and effusion;
mild to moderate synovitis, effusion, and tenderness in the right knee; and
mild synovitis in the ankles.  He opines further that walking any distance
would cause the RA in her peripheral joints to flare.  As noted, there is no
evidence confirming an inflammatory process in any peripheral joint that
would be susceptible to the effects of weight-bearing activities.  The
undersigned concedes that the claimant's bone-on-bone left knee DJD likely
interferes with her ability to sustain prolonged standing and walking and
that such activities would likely cause an exacerbation in the level of knee
pain that she experiences.  However, the evidence is persuasive that she
continues to maintain the ability to stand and/or walk for a total of at least
two hours out [of] eight.  Despite the claimant's contention that she stays in
bed for most of the day, physical examinations have not found any evidence
of muscle atrophy, loss of muscle tone, or decreased muscle strength–all
indications that she is more active physically than she has alleged.  She uses
no assistive device when ambulating and there is no evidence that she has
requested such a device or that any physician has suggested that she use
one.

There is also other evidence to support this finding.  The undersigned notes
that the claimant retains the ability to live alone and she testified that she
goes shopping without assistance.  The claimant alleges that her

impairments limit her ability to leave home and drive because she drives a minivan and has difficulty getting in and out of the vehicle. The undersigned notes, however, that she manages to do so without assistance and has not traded the minivan for a more accessible vehicle. Despite alleging such chronic severe pain that she is virtually bed-bound, the claimant has been prescribed little strong pain medications. She has not requested stronger pain medications or referral to a pain management clinic and, in fact, admitted that she does not even take the pain medication she is prescribed on a regular basis.

[R. 28-30].

One important aspect of the Commissioner's duty to develop a fair and complete record is her duty to recontact a claimant's treating physician. The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
>> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).  Although Dr. Dewees does not qualify as a treating source under the Commissioner's regulations,[4]  the ALJ is still required to consider his report. 20 C.F.R. § 416.927(d).  Moreover, because Dr. Dewees is a specialist in the field of rheumatology, his opinion is entitled to more weight in this area.  Instead of recontacting Dr. Dewees to explain any perceived ambiguities or inaccuracies in his clinical assessment, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

       The ALJ cited the plaintiff's daily activities as one reason for formulating the plaintiff's residual functional capacity to perform light work from the alleged onset date to April 2008, and sedentary work from April 2008.  The plaintiff stated that she can stand and walk five to 10 minutes and sit for 30 minutes at a time. [R. 142].  She reported that she does not cook because she can only stand for a limited period of time, and her limitations in activities have increased. [R. 144] Her relatives help her bathe, cook, do housework and yardwork. [R. 143-145].  When her relatives are unable to drive her to

---

[4]  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

doctor appointments, she does drive herself. [R. 146].  She testified that on average, she spends half of the day lying down. [R. 51].  The plaintiff used to be more active:

> I was on a bowling team, and I used to bowl, and it got to the point where I had to wear, you know, the wrist brace, and the knee brace, you know, and it was kind of hard just to get through the night, you know, and I was like, you know, holding the team back, so I had to give that up.  And I used to sew, make my own clothes, you know.  I used to crochet and do a lot of art, you know, and crafts, and things of [that] nature, and I couldn't do those because, you know, my hands would always [s]well up and my wrists would hurt, you know, every time I would, you know, try to do those things.

[R. 54-55].

The ability to perform the limited activities as testified to by the plaintiff does not rule out the presence of disabling pain.  The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform

13

minor household chores or drive short distances.  In <u>Easter v. Bowen</u>, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. <u>See Yawitz v. Weinberger</u>, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  <u>Douglas v. Bowen</u>, 836 F.2d 392, 396 (8th Cir.1987) (quoting <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The <u>Easter</u> court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting <u>Rhines v. Harris</u>, 634 F.2d 1076, 1079 (8th Cir.1980)).

  With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of <u>Hale</u>.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true." <u>Hale</u>, at 1012.

  At the hearing, the VE testified that a person with moderately severe to severe pain would generally be precluded from work. [R. 70].  Additionally, the need to lie down during the day would likewise preclude work. <u>Id.</u>

While the plaintiff's alleged onset date is March 26, 2004, substantial evidence supports the ALJ's decision that the plaintiff was not under a disability as defined in the Social Security Act through April 2008. However, as of April 8, 2008,[5] substantial evidence does not support the ALJ's decision that the plaintiff was not under a disability.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded benefits based upon an onset date of April 8, 2008, will be entered contemporaneously herewith.

DONE and ORDERED 12 January 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

---

[5] On this date x-rays of the plaintiff's left knee showed a "complete obliteration of the medial tibiofemoral joint space, basically bone on bone." [R. 272].